Good morning, your honors. I'm Mark Carlos. I represent the appellant, Mr. Timothy Jones. May it please the court and opposing counsel, I also... I was also the trial counsel on this particular case, which is, I think, important given the nature of this appeal and the issue. I think the only serious issue here we have is vouching. It's very important to understand sort of the setting of this case and the nature of the vouching which occurred. Mr. Jones was somebody with a long criminal history. He is an individual who is tattooed up. The agents in this particular case were waiting at a motel room, motel facility, waiting for him. Basically, he's on a fourth waiver. They're just going to come and arrest him when they see him. They see Mr. Jones coming out of the hotel room. He has a bag in his hand, puts the bag on his car. These agents are equipped with cameras, body-worn cameras. They roll up on Mr. Jones, according to these agents, and this is the only evidence that is indicative of any type of knowledge. Mr. Jones says, I got dope, and I got it in the bag. And then the agents turn their microphones on. They did no additional investigation. There is no fingerprint of the gun, no fingerprint of the clip, no fingerprint of the bag, no fingerprint of the drugs, nothing. And they had that bag. They had everything for the better part of a year and a half. They didn't do any investigation. With respect, counsel, you're obviously an experienced lawyer. You know what we're dealing with here is whether or not your client was in custody, in quotes. I've heard a lot of cases over the last 18 years, and I've never seen one where the officers just start to walk up, and immediately the client says, hey, basically, I'm guilty. I have this. I have that. Right. No guns, no badges, no anything. He just says that. Now, he may have been concerned because he had a previous criminal record, but where's the coercion? Where's the custody? They came up in vehicles. They were clearly law enforcement, and they just come straight up into him. He's not free to leave. He is basically held hostage by these police officers. You say basically, but, I mean, as you know, under the case law, the question is whether he could have felt free to leave. They didn't tell him he couldn't leave. They didn't raise firearms. They didn't shout at him. They didn't tell him to get down on anything. Nothing. Before they even got there, he says, basically, I got the guns and I got the drugs. Again, and that takes us back to, I guess, the initial vouching. It's if you believe that to be the case. I mean, the only witnesses as to that statement, which during my closing argument, and I even pointed out to the jury, if you saw Mr. Jones, his face is tattooed. He's tattooed up and down his arms. He is a person who looks like he's been involved in criminal activity. I hate to say it, but he's my client. And so I said, would this be the person who would say something like that? Obviously not. And, again, going back to it, the only evidence of that are these officers, these agents who are looking for Mr. Jones, who are looking for a reason to detain him because he's on the fourth and they think he's up to no good. Let's say he said that because in light of his prior history. Let's say he was just scared. Is that enough reason for us to find that he was, in quotes, in custody? If he was just scared from these agents? If he was just scared? I think. Apprehensive? Does that satisfy the requirement? I think that he would have to have an understanding that he was in custody of these agents. I mean, he knows these people are agents. He knows that the cars rushing up on him are law enforcement. They have their weapons. They have their body-worn cameras ready to go. So I don't think that's – I think that they would have done that. Are you saying that just the fact that they were police officers? You usually said nothing. Say they stood off at 100 yards and he could see them. And he said that, would he be in custody? I think it's different. If a police officer comes up on somebody and they pull someone for speeding, lock up to the vehicle. I think that's a different story. When you're in a parking lot and two cars rush up on you, these officers get out of the cars. They have weapons. I think that's a much different situation. They didn't brandish the weapons, right? They had them. Had them. They didn't brandish them. They had them. I think that's sufficient in this particular case in the split second it took to make that statement. Then after that, he didn't. As I understand your position, counsel, you're not even saying that's your strongest argument. What you're saying is that informs the vouching that occurred at trial. That's the predicate you're laying for that, correct? Absolutely. So would you address whether we're reviewing for plain error where you didn't object, and then where you did object, what really is the line that we should draw as an appellate court where vouching crosses the line? So there's two things. The error when I didn't object would have been, I think there's three parts. The first part is prior to the objection, which would have been the cookie jar argument to the jury. And then the one that followed the vouching objection was, I think, the one that the court needs to find plain error because there was no objection there. But the cookie jar analogy is very important because they came right on the heels of each other. It was very quick. The cookie jar analogy comes and then the vouching. And the cookie jar analogy is the basic one that prosecutors use. I've heard it before. I think it's improper where you say that you're standing there, and you come into the kitchen, and little Johnny's got a broken cookie jar, and there's crumbs on his fingers and on his lips, and he's saying, you know, I didn't do this. Do you need a body-worn camera? Do you need DNA analysis? So they buttress that right immediately, then comes the vouching. And the statement is, there can be no stronger evidence. This is the prosecutor saying this who has a higher standard, right, higher standard than the defense as far as, you know, making these types of statements. He's saying there can be no stronger evidence than the word of two or three witnesses. But did not the court immediately issue an immediate curative instruction? And under the circumstances, how can there not be harmless? Because the damage has been done. I mean, not to mention, in fact, I asked the court to admonish that it was improper. It should have been told to the jury that that was an improper argument because the prosecution knows better. They know that they shouldn't do this. They know that they shouldn't vouch for their witnesses, and that's exactly what they did. And this was a vouching intended for the purposes of getting a conviction. This is the only evidence in the case. This is it. And so what they say is, you know. What, what, what, what, what? The only evidence in the case? Are you serious? Yeah. They have the bag. They have him holding the bag. What's the evidence and knowledge? Zero. They've got on a phone that has thousands of texts. They have two texts that show that he has contact with people who use drugs. But other than that, there's nothing. What if instead of saying it that way, the government had said, we ask you to consider whether any additional evidence would be needed? Ask it that way. Would that be vouching? Yeah, I don't think that would be vouching. No, you're right. I think that if they ask the jury to make that determination, instead of having the prosecution, instead of having the government, I keep saying the prosecution. What I mean is the government. Instead of telling, having the government tell you that there can be no stronger evidence, which is false, they're saying, making a false statement, there can be no stronger evidence than the word of two or three witnesses, two of whom are police officers. So he's modifying it. They're saying that these witnesses we have are police officers, so they're not just regular witnesses, who have no motive to lie. So what do they know? What's this jury hearing in this particular trial from the government? So how do you tie the cookie jar analogy to vouching? Because the government made that statement in closing in response to the defense argument that the investigation was inadequate, that it wasn't good enough because they didn't do all these other things, and then the prosecutor is saying, well, you need to do all these things. It's like if you found the child with the cookie in their hand. And I think that goes to what the government argues in their briefs, that somehow I invited this by attacking the case. Well, I'm not suggesting that you invited it, but they were responding to that argument, but they weren't saying, I think you cited Valenzuela, but they weren't saying anything about the burden of proof. They were defending the investigation. But isn't that the burden of proof, though, if the only evidence is what he knew about this particular drug? Well, with Valenzuela, the concern was that the government diminished the actual burden of proof to below, beyond a reasonable doubt. They didn't say anything about the burden of proof here. They just said, here's evidence that you can consider that this investigation was sufficient. That doesn't say, and because maybe there's a cookie jar analogy, you don't have to find beyond a reasonable doubt. They didn't make that link. That's not the way it was phrased. They didn't say, like, this is why, you know, Mr. Carlos's argument is incorrect. It's what they're saying is that, you know, you don't need any other evidence. All you need is the fact that the person has crumbs. In this case, you don't need anything other than Mr. Jones with a bag in his hands. You don't have to show that he knew what was in there. So I think that that has the effect of lessening the burden of proof. And, again, that was immediately, I mean, within seconds of the vouching. And, you know, vouching, even the district court at the time, you know, had to talk to him about it. They gave the limiting instruction, which isn't the limiting instruction that I would have wanted. I wanted to say that it was improper for them to argument because they knew that was an improper argument. But, you know, the issue, the motion for a new trial, the district court found that it was, in fact, vouching. Let's say for a moment argument that we agree with the district court it was vouching. As you know, under, among others, Sarkisian, in order to show this was not harmless, you've got to show that it's more probable than not that the prosecutor's statement in the context of the entire trial materially affected the verdict. And what evidence do you have, what evidence could you produce to meet that standard? I would say that it's the way that the trial was presented to the jury. Once again, there was no forensic evidence whatsoever, no physical evidence that would basically tie Mr. Jones to that bag. So, likewise, there's no evidence of any type of knowledge other than the statements of these two officers. Other than his own statements? Well, yeah, if you believe those officers. That's kind of important, isn't it? But do you remember, I basically, that was the cross-examination of these agents, the entire case. This is like all the other cases on vouching have to do with whether or not, you know, it was a close case, which the district court said it was, and also whether this was important to the case. This is the only issue in the case. There was nothing else. It's whether or not you believe that this guy made this statement, because they otherwise had to show evidence of knowledge. But with respect, counsel, what I read this to say is the guy says, hey, I'm guilty, I did it. And you're saying the fact that there was vouching later on turns the whole thing upside down. No, we're saying the defense was these officers are lying. And so when the prosecution turns around and says, you know what, they're not lying because of this reason. And you tried to cross-examine them on that basis, right? I cross-examined their credibility. I did. And the jury had that information, and the jury made the determination, right? They made that determination after they heard from the government that there could be no stronger evidence than these witnesses who are police officers and have no reason to lie. I mean, that's when they made the decision. Take that out. Take that out. And if they said, you know what, determine the credibility based upon what you saw in court, that would be fair. But this is patently unfair to Mr. Jones given the nature of this case. You think that the vouching, as you view it, was irremediable. There was no way to put that genie back in the bottle. Absolutely. The bell had been rung, and there was no way in winning it. And if we disagree with you, you lose, right? We disagree with you. You mean? In other words, if we agree with you that there was no way to put the genie back in the bottle on this vouching issue, you win. If we don't agree with you, you lose. Is that right? At the trial, yes. I mean, that's what would happen at the trial because that was the whole case, the entire defense. But the district judge didn't just say something like, oh, you disregard that testimony. The district judge went on to explain to the jurors that you don't believe police officers just because they're police officers. You don't give their testimony any additional weight. You basically gave the curative instruction that seems like you requested. Well, I had to request it. What am I going to do? I'm on the spot. No, no, of course. So you correctly requested that instruction, and the district judge gave it. And then we have case law that says that we presume jurors follow instructions. So they were immediately told, oh, no, no, no, no. Just because these guys are police officers doesn't mean they're telling the truth. No, they weren't read that instruction, but they were told that. And they were told that, which I think might be different from the actual reading of instructions. But regardless, I mean, I – So they were given a curative instruction at the moment after this testimony occurs, and then they were also given the standard instructions about how to weigh credibility. The standard instructions, yes. But I believe that this should have been – the court should have advised the jury that that was an improper argument by the prosecution, because at that point they'd understand the reason the improper argument was done is for the purpose of the conviction at that time. Do you want to save any of your time, Mr. Carlos? If I can have one minute at 3 o'clock. If you don't want to save it, you don't have to. I don't think I have any time, do I? You have 51 seconds. 51 seconds. I'll save 51 seconds if I need it. Very well. Thanks. Okay. All right. Mr. Srinivasan, are you by chance a relative of the chief judge of the D.C. Circuit? I am not, unfortunately, although he's a very nice man. Indeed. Good morning, and may it please the Court. Rajesh Srinivasan for the United States. The government's reference during rebuttal to officers who had no reason to lie was not vouching. And regardless, substantial prejudice did not result from it. Because there was no error there nor plain error elsewhere, this Court should affirm. Unless the Court wants to take me elsewhere, I'll start with the vouching issue. I agree with my colleague that the context is important for evaluating this comment. This comment came after defense counsel's strategy was to attack the credibility, the investigation of the officers in this case who testified. He said that they had bias, that they had an insufficient investigation, that they were lazy, that they were untruthful. The prosecution was entitled to respond to those criticisms by defending the credibility of its witnesses through an inference in the record. And that's all that happened in this case. Vouching occurs when there's either a personal assurance of credibility or the prosecutor refers to extra-record evidence. Neither happened here. The comment that the officers had no reason to lie was permissible under Wilkes. In Wilkes, a similar situation happened where defense counsel spent their argument attacking the prosecution's witnesses. And in response, the prosecution said to ask the jury to decide whether over a dozen witnesses lied to them or whether the defendant lied. And then the prosecutor explicitly answered the question for them and said the defendant lied. What we have here is an even milder response than that. All the prosecutor said was that there was no – that the officers had no reason to lie. And he contrasted that to the defense's only witness, Kevin Lewis, who did have reason to lie because the record showed evidence of bias, both in the fact that he was a family member, the fact that he was called only a few days before trial to testify, and the fact that he lied multiple times on the stand. Regardless of whether there is vouching in this case, however, the immediate curative instruction ensured that any impermissible prejudice that resulted would have been cured. As this Court has recognized in Washington, a prompt corrective action by the trial judge is usually sufficient to cure any problems. But here, immediately after that curative instruction, the prosecutor again argued credibility, again went back to saying you're going to hear instructions and then you're going to find that the officers were credible. Did that create a situation where that curative instruction was not effective? Two responses, Your Honor. First, the Court reviews this issue for plain error, which I think my colleague agrees with, because counsel needs to make continuing – either ask for a continuing objection or object every time an impermissible comment was made. But besides that, what the prosecutor did in that second part was clearly permissible under this Court's case law. Under Doss, for example, the government's allowed to frame its argument in terms of the jury instructions and then tell the jury how they think they should find based on those instructions. In doing so, it's clear to the jury that they are the ultimate arbiters of credibility and not the government. And that would be especially true in this case, because in the opening-closing argument, the – another prosecutor framed the credibility issue purely in terms of what the jury decides. In fact, he said you're the only ones who get to determine credibility, and then he referred to the credibility instructions. So by the time this comment came along and the subsequent comment framing it in the terms of instructions, the jury had heard multiple times, both from the government and from the Court, that they decide credibility and how to decide credibility issues. The fact that the immediate curative instruction came right after the only objected to comment, however, should be sufficient to cure any prejudice, particularly because it was tied to the particular objectionable comment that the – that defense counsel raised, that because they're police officers, they're entitled for you to comment. Mr. Cord made clear that that is not the case and that they need to be evaluated like any other witness. In addition to the immediate curative instruction, there is no prejudice in this case because there was a substantial amount of other evidence supporting the conviction. I respectfully disagree with my colleague about this. For one thing, the defendant was, in fact, found with 220 grams of pure meth, 240 grams of cut meth, as well as a loaded gun in that bag. That itself corroborates a statement that – the testimony of the officers that he did indeed have a gun and drugs. Didn't they also go to his – where he was staying and found additional drug paraphernalia and drugs? I don't believe that's the case. They didn't find any personal use paraphernalia, but they did find other things on his cell phone that indicated involvement in drug trading. For example, a text from the night before referring to the fact that he has white. He had text connecting him to other dealers, both in terms of paying off debts and communicating with them. He had text referring to meeting spots, which is another indicia of drug dealing. And all of these things were testified to by the expert witness in this case. I'm sure my memory on this must be confusing with another case, but didn't he say ultimately it was his girlfriend's stash, basically? Am I thinking of a different case? I don't think it was his girlfriend's stash. His stash, he said that another woman handed him the bag. Okay, but didn't they find something in the place he was staying that he had just come out of? Didn't they find any drugs or other – It's possible that I'm misremembering the record, but I don't recall that in my review. I apologize. We hear lots of these kind of cases, and they kind of mesh together sometimes. So bottom line is, from your perspective, there was other evidence, but it wasn't in the place where he was staying and so on. That's correct. There was other evidence. They found $3,500 of currency on him, an unusual thing to be carrying around if you're not a drug dealer and when you're carrying drugs with you. They also found two phones, separate phones on him, yet again another indicia of drug dealing. Most people – Wait a minute. Didn't that famously come up during a Supreme Court argument where some justice said, why would anybody have two phones unless they're a drug dealer, and then the other justice said, I have two phones? I mean, I'm not sure we can read much into the fact that he had two phones. I actually think that supports what I'm saying because the reason why you have two phones in the case of a Supreme Court justice is one is your personal phone, one is your work phone. The same was true here. He had a personal phone, which we could not get into one of the phones, but the other phone appeared to be his work phone, where he communicated with people, potential customers, potential other drug connects, communicated meeting locations. So it was his work phone, and based off the other evidence in this case, his job was dealing drugs. But my memory apparently was not faulty on this, at least according to my notes here. My notes say that after Officer Hensner also searched his person and found two cell phones, $3,500 in cash in various denominations, and a room key to the country inn and suites hotel. The officers found other indicia of drug trafficking in the hotel, including a bag of methamphetamine, a scale, a Ziploc bag, sandwich bag. So that's additional evidence, right? That is additional evidence. I have to admit, Your Honor, I don't recall in my review of the record reading that introduced at trial that I could easily be misremembering the record on that. I just thought there was additional evidence. So you're saying that may not have been introduced, but it's in the record. I don't know how it got in there if it wasn't introduced. It might well be, and I'm just misremembering the particular testimony. Wouldn't this whole case, all these issues not have occurred if the officers had just turned on the body cameras? I mean, they're getting out of the vehicle. They're going to approach him. It could have been recorded, and then there wouldn't be any question of who said what, when. I haven't seen argument from the parties about this, but what is the significance of the fact that they did not turn on their body cameras? Are there regulations or anything that apply that tell them when they have to turn them on? There are two responses, Your Honor. First is they didn't have body cameras at the time, and the policy of the office was not to turn on what they did have unless they were interviewing somebody. So they just had audio. They didn't have video. That's correct. They had audio. And the primary use of that, as testimony revealed at trial, was to record interviews in closed environment, in controlled environments. And that's not what was happening when they were pulling up to the defendant. They were in a rapidly evolving situation and worried about officer safety. So – and it was not policy at the time to always have the recording device on. So they happened to not turn it on when he made his spontaneous statement, which goes to show that he really, truly was not in custody when he made that statement because officers didn't even have time to turn on their recording devices before he made the statement. AUSAs have an opportunity to go to training from time to time. Do you happen to know whether the Justice Department instructs or trains AUSAs regarding this vouching and what can be said permissibly? We do instruct AUSAs on what constitutes vouching, and we do advise AUSAs to stray far away from the line. This comment here is perhaps closer to the line than comments in other cases, but it still falls on the line of permissible comments. But, yes, we do have training that prosecutors receive on what constitutes vouching. The final thing I would say about the evidence in the case is he also had a prior conviction that was introduced, although it's not admissible to show propensity. It is admissible to show knowledge, lack of mistake, absence of mistake, about what was in the bag. So even if it's not there to show that because he's a drug dealer once, he's always a drug dealer, it does undermine the defense's argument that he didn't know what was in the bag. Unless the Court has any other questions. Is there a question? I think not. We ask the Court to defer. Thank you. Thank you. All right. Mr. Carlos, we're going to really bump up your time, give you two minutes. Okay. I just want to answer the Court's question regarding the motel room. So, yes, there was in the reports, he came out of a motel room. The police went into the motel room and searched the motel room. There were other individuals there who were using drugs, and they found the drug paraphernalia, but it wasn't introduced against Mr. Jones because the other individuals were in the room. So the material that I referenced was there, but you said other individuals also lived there and it wasn't tied to Mr. Jones? Correct. Okay. And I don't believe it was introduced against him. But that's important because, well, sort of important for the Court's understanding, is that he also told the agents that he was strung out on dope, that he was a heroin addict and a meth addict. So that would, as part of the, I think I even maybe alluded to that during the closing, is that, you know, he's a drug user, which would put him next to other drug users, which would mean why he would have drugs. We tried to, you know, combat the possession for sale by saying the individual could have this for himself just to use, and that's part of the cross-examination of the experts in this case. But, you know, going back to one of the comments from the government is that, you know, that they want to say that the jury is the ultimate judge of the credibility. You know, that's not what they did here. I mean, with the vouching here, I've been doing this a long time, and this is like the most extreme level of it that I've seen. I mean, because of the way it's broken down. You know, first of all, telling this jury that there is no stronger evidence, which is not right. It's incorrect. It's false. And they know it. And they said, but the word of two or three witnesses, and the two of them are police officers, he identifies them and then says they have no motive to lie. So that drives into this jury, wow, these guys must know something. They're the government. You know, I'm representing, you know, a guy whose face is tattooed, who has a long, lengthy criminal history, who apparently is found next to some bag of drugs, and there's a gun in there. They're alluding to some sort of danger that he has. But in the end, the question of knowledge is something that the jury must make that determination of, and there just wasn't evidence of it. Thank you very much. We appreciate argument from both counsel. The case just argued is submitted. The court stands adjourned for the week with the proviso that, of course, the cases that we've submitted for tomorrow are effectively submitted as of that date. So with that exception, the court stands adjourned for the week. All rise. This court for this session stands adjourned.
judges: SMITH, BADE, Fitzwater